THE STATE ex rel. JOHN W. MILLION v. E. D. GRAHAM et al., Appellants.

·Division One, November 30, 1912.

1. LOCAL OPTION LAW: Title: City Election, etc., Germane. The title to the Local Option Law is not in conflict with the constitutional provision declaring that no bill shall contain more than one subject, "which shall be clearly expressed in its title." The title provides for "submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters" of the

State ex rel. v. Graham.

county and certain cities, and the provisions in the body of the act for a petition for such an election to be signed by one-tenth of the qualified voters, that such petition shall be addressed to the city council of the city, that the city shall order the election, that the city shall conduct the election, that it shall record the result, pay the expenses and may take a census, are all germane to that title, and are all necessary details of a fair election.

2. ———: **Election: Within Sixty Days of a State Primary.** The Local Option Law does not prohibit an election thereunder within sixty days of a state primary for the nomination of candidates for office. The words of that statute that "no such election, held under the provisions of this act, shall take place on any general election day, or within sixty days of any general election held under the Constitution and laws of this State, so that elections as are held under this act shall be special elections, and shall be separate and distinct from any other election whatever," are explained by Sec. 6570, R. S. 1889, which declared that "the term 'general election' refers to the election required to be held on the Tuesday succeeding the first Monday of November, biennially," and by many other statutes and the Constitution itself, in which the words "general election" are used to designate the regular biennial election for the election of the officers of the State and its political subdivisions; and the further provision of that statute to the effect that such local option election in a city shall not be held "within sixty days of any municipal or state election held in such city" was simply intended to add the words "municipal election" to the words "general election" used in the provision in reference to counties.

Appeal from Audrain Circuit Court.—*Hon. J. D. Barnett*, Judge.

AFFIRMED.

*Robertson & Robertson* for appellants.

(1) . The local option election shall be held within forty days after the receipt of such petition, but not within sixty days of any municipal or State election held within such city. R. S. 1909, Sec. 7239. Notice of such election shall be given by publication in the county and such notice shall be published for four consecutive weeks, the last insertion to be within ten

days next before such election. R. S. 1909, Sec. 7240.
A local option election held within sixty days of a
municipal election to fill a vacancy in a city council is
held invalid in law. In re Wooldridge, 30 Mo. App.
612; State ex rel. v. Ruark, 34 Mo. App. 328; Dooley
v. Jackson, 104 Mo. App. 21; State ex rel. v. Bower-
man, 40 Mo. App. 576; State v. Search, 39 Mo. App.
393; 23 Cyc. 100; Louchran v. Hickory, 129 N. C. 281;
State v. Hirch, 25 Ind. 257; Strasberg v. Burk, 13 Am.
L. Reg. (N. S.) 607; 3 Words & Phrases, p. 2335. (2)
Primary elections are provided for by Art. 4, Ch. 43,
R. S. 1909 (Laws 1909, p. 481). The date is the first
Tuesday of August. R. S. 1909, Sec. 5856. The law
in force in May and June, 1908, is found under the
head of "Elections," primary, Laws 1907, p. 263. The
date of that election is the first Tuesday of August,
1908. The committee to be elected, one for each of
the four wards of the city of Mexico, is provided for
in Sec. 28, p. 268, Laws 1907. The statutes in rela-
tion to elections control, Sec. 32, Laws 1907, p. 270.
The primary election is an election held under state
law. Dooley v. Jackson, 104 Mo. App. 21; State ex
rel. v. Miles, 210 Mo. 127; State v. Buchfelder, 231
Mo. 55; State ex rel. v. Taylor, 220 Mo. 618; State
v. Peyton, 137 S. W. 979; State v. Cox, 137 S. W. 981.


*S. D. Stocks, F. R. Jesse, E. A. Shannon* and
*Barclay, Fauntleroy & Cullen* for respondent.


The State primary is not a general election or
State election within the meaning of the Local Option
Law. Dooley v. Jackson, 104 Mo. App. 21; Ledger-
wood v. Pitts, 122 Tenn. 1036; Hanna v. Young, 84
Md. 179, 34 L. R. A. 55; Montgomery v. Chelf, 118
Ky. 766; State v. Felton, 77 Ohio St. 554, 12 Am. &
Eng. Ann. 65; Riter v. Douglass, 109 Pac. (Nev.) 444;
Lansdon v. Board, 18 Idaho, 596.

BROWN, C.—This is an appeal from the judgment of the Audrain Circuit Court awarding a peremptory writ of mandamus against the mayor and members of the city council of the city of Mexico, a city of the third class having more than twenty-five hundred inhabitants, commanding them to call a meeting of the council and order an election under the Local Option Law (Ch. 22, Art. 3, R. S. 1899), upon a sufficient petition presented May 11, 1908. The council had denied the petition on the ground that an election ordered in pursuance of the terms of that law must necessarily be held within the sixty days next preceding the August primary to be held on the fourth day of the succeeding August. Whether this is a State election within the meaning of that term as it is used in Sec. 3028, R. S. 1899, is the principal question in the case. It was also insisted in the return of the appellants to the alternative writ that the Local Option Statute conflicts with Sec. 28, Art. 4 of the State Constitution, because it contains various subjects vitally necessary to sustain any proceeding under its authority, which are not expressed in its title.

I. The constitutional provision, in so far as it relates to the questions raised in this case, is as follows: "No bill . . . shall contain more than one subject, which shall be clearly expressed in its title." The title of the Local Option Law (Laws 1887, p. 179) is as follows: "An act to provide for the preventing of the evils of intemperance by local option in any county in this State, and in cities of twenty-five hundred inhabitants or more, by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county or city; to provide penalties for its violation, and for other purposes." In support to their position the appellants, in their brief, make the following points:

"Lying outside of the purview of the title, the act provides for the petition to be signed by one-tenth of the qualified voters of the county or city; second, such petition shall be addressed to the city council of the city; third, such city shall order such election; fourth, the city shall conduct such election; fifth, it shall record such election and the result thereof; sixth, it shall pay the expenses of such election; seventh, it shall take the census of such city. In another section it provides for the giving of notice of such elections, etc. All of these things lie outside of the submission of the question of prohibiting the sale of intoxicating liquors to the qualified voters of any city or county."

The provisions are not only germane to the title, but are all of its very essence. The subject is the submission of the question to the qualified voters of the county or city. This implies the permission to elect by vote what course they will pursue in the matter, and includes every detail which, in the legislative discretion, is proper to take a fair vote and to ascertain and express the result. There is nothing in this act not designed for this purpose, and clearly expressed in its title.

II. Section one of the act the title to which we have alrealy quoted, and the interpretation of which presents the real question raised in this appeal, provides for the submission to the qualified voters of any county who shall reside outside the corporate limits of any city or town having a population of twenty-five hundred inhabitants or more, the question whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold in such county outside such city or town. This section contains the following proviso: "Provided, that no such election, held under the provisions of this act, shall take place on any general election day, or within sixty days of any general election held under the Constitution and laws of

this State, so that elections as are held under this act shall be special elections, and shall be separate and distinct from any other election whatever." At the time these words were used there existed in this State, as there has ever since, a statutory rule of construction (R. S. 1889, Sec. 6570) as follows: "The term 'general election' refers to the election required to be held on the Tuesday succeeding the first Monday of November, biennially," which should control "unless such construction be plainly repugnant to the intent of the Legislature, or of the context of the same statute." This name had been conferred by the Constitution of the State upon the regular biennial election for officers of the State and its political subdivisions had been accepted and used by the Legislature in many enactments, and was expressly defined in the statute last quoted, and there is nothing in its use in this act repugnant to the definition so established; and we have no doubt it was used deliberately for the purpose of expressing that meaning. It made it impossible to submit the question of local option during the period of political excitement preceding and succeeding the important event that determines the political complexion of the State and country at large, and it used the words which follow to impress more strongly upon the act that, in addition to the exclusion of this considerable portion of the year from the period during which it might be held, the election is to be a special one, devoted to the submission of that proposition separate and distinct from all others.

The second section of the act provides for the submission of the same question in cities and towns having twenty-five hundred inhabitants or more. It provides that such election shall not be held "within sixty days of any municipal or State election held in such city." This clause was evidently intended to add to the description used in the proviso of the first section, the municipal election, and for no other pur-

pose.  The general election is the one in which the offi-
cers of the State and its political subdivisions are chos-
en—the State election; the municipal election is the
one in which municipal officers are elected.  Although
the word has many meanings, in the connection in
which it is here used, it implies a vote for the choice
of public officers.

The idea of a "primary" or primary election was
not in the mind of the Legislature, because at the time
of the passage of the act there was no such thing au-
thorized by the laws of the State. In 1885 (R. S. 1889,
Ch. 60, Art. 4) the arm of the State was extended
for the protection of political parties who might choose
this method of selecting persons to be presented as the
candidates of such parties for the suffrages of the
qualified voters, or for delegates to their nominating
conventions.  This statute simply provided for the
prevention and punishment of fraud, as the public
laws frequently provide for the protection of purely
private property and private rights and contracts. The
primary was only made a feature of the public election
system by the Act of March 18, 1907, which is the law
now invoked by the appellants for the purpose of avoid-
ing this election.  Its title (Laws 1907, p. 263) is:
"An Act to provide for party nominations by direct
vote."  One is struck by the care with which the word
"election" is excluded from this act and its title, as
a designation of the plan or method of nomination for
which it provides.  It gets in, however, by an amend-
ment to section 31, to which it is attached as "section
31a," and its incongruity seems to emphasize the gen-
eral plan of exclusion which pervades the act.  It does
not apply to special elections to fill vacancies, nor to
county superintendents of schools, to city officers not
elected at a general State election, nor to town, vil-
lage or school district officers.  Instead of being an
election within the ordinary political meaning of that
term, it is a part of the machinery provided by the

Legislature for holding the general State election, its office being the qualification of the candidates from whom officers are to be selected in that final function.

It follows that the August primary of 1908 was not a State election within the meaning of section 2 of the Local Option Act of 1887, and that the judgment of the circuit court should be affirmed, and it is so ordered.

PER CURIAM. — The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.